IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CIVIL NO.: 14-423 (CCC) |
| [2] EDUARD RIVERA-CORREA, | |
| Defendant. | |

**OPINION AND ORDER**

On July 8, 2014, a grand jury returned an indictment against [2] Eduard Rivera-Correa ("defendant" or "Rivera-Correa"), mayor of the Municipality of Río Grande, Puerto Rico, charging him of bribery with respect to programs receiving federal funds, in violation of Title 18, United States Code, §666(a)(1)(B) and (b); attempted extortion, in violation of Title 18, United States Code, §1951; and obstruction of justice, in violation of Title 18, United States Code, §1512(b)(1). ECF No. 3. Two counts specifically relate to obstruction of justice, one of them for knowingly intimidating, threatening, and corruptly persuading or attempting to persuade on April 16, 2012 a contractor with the intent to influence, delay, and prevent said contractor's testimony in other criminal cases, namely United States v. Sol Luis Fontanes-Olivo et al., 12-159 (JAF) and United States v. Juan Carlos Mercado, 12-266 (GAG), while the other for knowingly intimidating, threatening, and corruptly persuading or attempting to persuade on April 7, 2014 a contractor with the intent to influence, delay, and prevent said contractor's testimony in a grand jury proceeding. Id. at 7.

Pending before the court is the United States' motion to detain Rivera-Correa without bail. ECF No. 6. A bail hearing was held on July 14, 2014. ECF No. 17. The United States Probation Office has submitted a report recommending that the defendant be detained without bail on risk of

flight and danger to the community grounds. Although the court does not share the view that Rivera-Correa poses a risk of flight so severe that would warrant his pretrial detention, it ultimately concludes that there is no condition or combination of conditions that would reasonably assure the community's safety.

Defendant, a United States citizen and lifetime resident of Puerto Rico, is the seventh of fourteen siblings. Based on the proffer of the evidence heard during the bail hearing, several of defendant's siblings, namely Edith Rivera-Correa, Marta Rivera-Correa, Arnaldi Rivera-Correa, Marilyn Rivera-Correa, Nélida Rivera-Correa, Anastacio Rivera-Correa, and José Rivera-Correa, would testify that the defendant is a peaceful and law abiding citizen, incapable of hurting anybody. Similar testimonies would also come from other relatives like Christian Rivera-Díaz, defendant's son; Lois G. Vázquez-Rivera, defendant's nephew who is also a lawyer; Carla M. Garayúa-Díaz, defendant's stepdaughter; Eunice Díaz-Cruz, defendant's former spouse; as well as from neighbors Luz Esther Febus, Natanael Rivera Martínez, José Antonio Márquez Martínez, Rangel Vázquez; friends Regino Jiménez, Eddie Quiñones-Rivera; and pastors of religious congregations, specifically Noemí Caraballo and José Calo Castro. Defendant has assured the court that many more could be called to the stand to testify as to his good character and respect for the law.

The Pretrial Services Report, which in its assessment of risk of nonappearance raises the concern of unexplained assets, indicates that the defendant has three residences and three vehicles registered under his name, among other assets, and that taking into account defendant's liabilities, he has a net worth of $370,089.00. His estimated monthly cash flow is $1,817.00.[1]  According to a report prepared by José Luis Morales-Algarín, Senior Auditor of the Government's Ethics Office of

---

[1] Defendant's monthly income, according to the Pretrial Services Report, is $6,751.00, while his monthly expenses total $4,934.00.

2

the Commonwealth of Puerto Rico, Rivera-Correa won prizes (jackpots) in the casinos at the Condado Plaza and El San Juan hotels totaling $99,872.14 in 2009; $37,478.18 in 2010; $39,872.03 in 2011; $36,163.00 in 2012; and $29,167.53 in 2013. ECF No. 19-1.[2] The report also indicates that the $463,740.40 deposited at Rivera-Correa's bank account between December 2007 and October 2013 can be broken down as follows: $293,042.09 from his salary; $16,087.24 from his retirement pension; $66,222.24 in cash; and $88,388.83 unidentified. Id.

At the hearing, auditor Morales-Algarín acknowledged on cross examination that he did not find any evidence of defendant receiving or earning any "illegal income". He also admitted that the report introduced into evidence by the government does not detail the expenses incurred by the defendant at the casinos. Those expenses, auditor Morales-Algarín clarified, appear in another report, copy of which was not introduced at the hearing. The Pretrial Services Report, however, states that the defendant indicated that he would frequent casinos every couple of months and spend $300 per outing.

Even though there are some components of Rivera-Correa's financial situation that raise concerns and deserve a closer inquiry, the evidence regarding his assets is insufficient to detain him without bail on risk of flight grounds. Rivera-Correa has strong ties to the local community. These ties go beyond having an extended family and circle of friends in Puerto Rico. He owns real estate property in Puerto Rico, and despite some history of foreign travel, the record is devoid of any suggestion that Rivera-Correa has ever spent a prolonged period of time in a foreign country, that he has financial interests or investments in a foreign country, or that he has relatives or close friends

---

[2]According to the report, Rivera-Correa's wins at the casinos between the years 2009 and 2013 totaled $242,552.88, of which $184,565.62 came from the Condado Plaza Hotel, while the remaining $57,987.26 came from the El San Juan Hotel. ECF No. 19-1.

outside of the United States. A secured bond should suffice to reasonably assure the defendant's appearance to future court proceedings.

Turning now to the second prong of the analysis, that is dangerousness to the community, we begin by noting that although the defendant owns two firearms, both of them – according to the uncontested proffer made by the defense – are duly registered and have been turned over to law enforcement authorities. Furthermore, defendant does not have any prior criminal history and he yielded negative results to all drugs tested by the Pretrial Services Office. The main thrust of the government's request for detention, however, springs from the obstruction of justice charges in counts seven and eight of the indictment and threats made by Rivera-Correa against two confidential sources and co-defendant Alejandro Carrasco. With regard to count seven, one of the recordings on April 16, 2012 contains the following exchange in its pertinent part between the defendant and one confidential source regarding another confidential source's assistance to the authorities:[3]

| | |
|---|---|
| Rivera-Correa: | You don't bear any ill will towards him, but I would catch him – I would kill him. |
| Source: | No, I know, but... |
| Rivera-Correa: | He's just a huge asshole. |
| Source: | Yes, I – |
| Rivera-Correa: | I would catch him – look, I would catch that guy... Look, look, eh, eh. He's the worst kind of traitor. |
| Source: | That's right. |
| Rivera-Correa: | He's the real traitor. |
| Source: | But – |
| Rivera-Correa: | It's that, look, I – I that I don't ... if I see that guy, I would run him over with a car, because I can't – I can't stand those type |

---

[3] The transcript (Ex. 1B) of the recording (Ex. 1A) states that it is a draft. Therefore, the government is granted ten business days to file a certified translation of the transcript in its final form. As exhibits 1A and 1B do not always make it clear when a particular recording was made and during the hearing Federal Bureau of Investigations Special Agent Edwin R. López was not always asked when the conversations were recorded, for purposes of this report the court is relying – only to the extent that it was not articulated during the hearing – in the government's detention motion (ECF No. 6) as a supplemental proffer of the evidence solely for purposes clarifying the dates in which the recorded conversations occurred. Moreover, at the hearing the defendant did not contest the dates mentioned in the government's detention motion.

of persons.

Ex. 1A; 1B at 4, 5.

In that same conversation, Rivera-Correa is recorded warning the confidential source: "... And another thing I'm going to tell you but really honest. If one day you turn into a snitch you'll be fucked." Ex. 1A; Ex. 1B at 13. Other conversations farther removed from the April 16, 2012 date mentioned in count seven contain remarks that have been highlighted by the government. For instance, on May 17, 2012, another exchange between defendant and a confidential source is recorded:

| | |
|---|---|
| Rivera-Correa: | You're fucked for talking. |
| Source: | That's correct. |
| Rivera-Correa: | You can't ever talk.... |
| Source: | Yes, but the fucker wasn't an employee and he had to give notice. |
| Rivera-Correa: | Okay, but... he could be in a coffin and still shouldn't talk. |
| Source: | Alright. |
| Rivera-Correa: | Remember when I spoke with you? |
| Source: | Yes – yes. |
| Rivera-Correa: | You don't talk. |

Ex. 1A; 1B at 23.

On July 18, 2012, defendant tells a confidential source regarding another source: "Well, let's put a hit on him." Ex. 1A; 1B at 27. Later in the year, that is December 19, 2012, defendant is recorded having a conversation with a confidential source about a subpoena that had been served to the Municipality of Río Grande by the Puerto Rico Department of Justice:

| | |
|---|---|
| Source: | ... [N]othing can be done over the telephone. |
| | ... |
| Source: | And when you have to see me, what you have to tell me is "... I have to see you, about the project." |
| | ... |
| Rivera-Correa: | You tell the guy, "the guy warned me, that an obstruction doesn't come down." |

| | |
|---|---|
| Source: | What? |
| Rivera-Correa: | If you say, "look, Eduard told me," I'm fucked. |
| Source: | No-no-no, I know. |
| Rivera-Correa: | Ok? I have that commitment. |
| Source: | I know, I know, what the fuck. |
| Rivera-Correa: | And, put a zipper on, there, on your mouth. Very simple, really easy to solve. Heard me? |
| Source: | I know, I know, dude. |
| Rivera-Correa: | Really easy to solve. Doesn't matter – |
| Source: | From your lips to God's ears. |
| Rivera-Correa: | – there are no open doors. |

Ex. 1A; 1B at 78, 79.

With respect to count eight, the government contends that the following recorded conversation transpired in the context of Rivera-Correa commenting to a confidential source of what he intends to do with co-defendant Alejandro Carrasco:

| | |
|---|---|
| Rivera-Correa: | One thing is that you know about it, and another, is that you can prove it. |
| Source: | Well, but the thing is that he can, he can prove it, because what happens is that he, yes, but this is what's happening. If he is pressured – |
| Rivera-Correa: | I will destroy him.[4] |
| Source: | Yes, he, he, he can be pressured. |
| Rivera-Correa: | But what is he going to say? That he thinks so? |
| Source: | No, but the problem is ... if he's pressured, he's going to start talking about me. |
| Rivera-Correa: | Yes. |
| Source: | And they are going to contact me. |
| Rivera-Correa: | And all you have to say is no. |
| Source: | Well, the thing is that I can lose my privileges. Because I can't lie to them. |

Ex. 1A; 1B at 86. At another point in the conversation, the following assertions are made by the defendant and a confidential source:

| | |
|---|---|
| Source: | Those guys are going to sit you down there – |

---

[4]The assertion in Spanish is "Yo me lo como." A literal translation of this remark would be "I eat him" (uncertified translation added).

| | |
|---|---|
| Rivera-Correa: | Me? |
| Source: | – under oath. Me too. They are going to say, "Under oath: Have you given money to another mayor?" Eduard. |
| Rivera-Correa: | Don't say anything else, don't say anything else... |
| Source: | Well, I can't lie, right? |
| Rivera-Correa: | All right. |
| Source: | Ugh? |
| Rivera-Correa: | You screwed me. |
| Source: | Well, no, it's not that, it's not that you're screwed..., you want to look at me; I am not the problem. |
| Rivera-Correa: | You're a friend. |
| Source: | I kept silent. I have my life in order. And now, this gentleman... |
| Rivera-Corrrea: | Keep silent. |
| Source: | Excuse me? |
| Rivera-Correa: | Keep silent. |
| Source: | Well, I will keep silent Eduard. |
| Rivera-Correa: | Nothing's going to happen to you.[5] |

Ex. 1A; 1B at 87.[6]

Defendant argues that the obstruction charges are the result of an entrapment as allegedly he never initiated contact with the confidential source. "An entrapment defense, not easily established, requires each of two conditions: first that government agents not only induced the crime but did so by a degree of pressure or by other tactics that are improper. United States v. Acosta, 67 F.3d 334, 337 (1st Cir. 1995); and second, that the defendant was not already predisposed to commit the crime, United States v. Rogers, 102 F.3d 641, 645 (1st Cir. 1996)." United States v. Santiago, 566 F. 3d 65, 68 (1st Cir. 2009). Defendant has not proffered with specificity the evidence that would lead the

---

[5] At the hearing, defense counsel objected to the translation of this sentence in the transcript. The sentence in Spanish reads "No te pasa nada." The interpreter in court translated this statement as "Nothing happens to you."

[6] The government has also brought to the attention of the court other portions of various conversations in April, 2014, with assertions from Rivera-Correa to a confidential source like: "We have to clam up..." (Ex. 1A; 1B at 91); "Do you know how you can win? Mouth tightly sealed. How I can prevail? Mouth tightly sealed." (Ex. 1A; 1B at 126); "Whatever you say, if you say something, you're screwed..." (Ex. 1A; 1B at 126); "[I]f you betray that ... friendship, I will be very, very offended. And the only person who has done that to me is him; him." (Ex. 1A; 1B at 132); "I'm not going to say crap. I'm going to say no, no, no, no, no, no, no. Never, never, never, never, never, never, never, never, never. Man, If I say something on my behalf..., I'll get screwed. I'll be in jail the next day." (Ex. 1A; 1B at 136).

court two conclude that this two-pronged test has been established. Instead, in a conclusory fashion he argues that the recorded conversations constitute an entrapment because allegedly he did not initiate the conversations with the confidential source. This fact, however, in and of itself without more, is insufficient to sustain an entrapment defense.

Defendant also argues that at least two years have elapsed since the conversations recorded in 2012, particularly since he was recorded suggesting to a confidential source "let's put a hit on him", referring to a potential witness. Implicit in defendant's argument is that the fact that nothing has happened in two years is indicative that nothing will happen in the future. Defendant, however, loses perspective of the fact that he has also been recorded as recently as a few months ago regarding grand jury proceedings telling a confidential source that he should remain silent and "nothing happens to you." Furthermore, the court cannot take as mere "puffing" assertions like "I would catch him – I would kill him", "if I see that guy, I would run him over with a car", "[i]f one day you turn into a snitch you'll be fucked", "[w]hatever you say, if you say something, you're screwed...", "he could be in a coffin", and "let's put a hit on him", as we are not dealing with a single, isolated stray remark. Although at the hearing defendant attempted to portray some of these statements as vague or as having more than one possible interpretation, it is difficult to envision any ambiguity in expressions like "I would kill him" and "I would run him over with a car".

The defendant also cites United States v. DiGiacomo, 746 F.Supp. 1176 (D.Mass. 1990) in support of his request for conditions of release. In said case, however, the United States District Court for the District of Massachusetts noted that while the evidence indicated that Biagio DiGiacomo's primary illegal activity was loansharking, "[i]t does not appear ... that he personally resorted to violence to collect debts or had to direct others to use violence to collect debts on his

8

behalf." Id. at 1188. The court also indicated that "DiGiacomo apparently understands the severe consequences almost certain to result if he directly or indirectly threatens or injures a government agent or his family." Id. In the case presently before the court, however, there is no need to speculate as to the possibility of threats in the future, because Rivera-Correa has been recorded already making threats to or about others. Anthony Spagnolo, another defendant in the DiGiacomo case, was also granted conditions of release, but in doing so the United States District Court for the District of Massachusetts noted that "Spagnolo is not charged with attempting to suborn perjury or to obstruct justice, and there is no evidence that he has done so." Id. at 1189. In the case at bar, however, Rivera-Correa has been charged with two counts of obstruction of justice and there is evidence that has been presented by the government in support of those charges.

In evaluating the government's request for detention on dangerousness grounds, the court must determine whether there is clear and convincing evidence that there is no combination of conditions of release that will reasonably assure the safety of any other person. 18 U.S.C. §3142(f). "[I]f the district court were to conclude from defendant's past behavior that there is a serious risk that defendant, if released, will attempt to injure or intimidate other prospective witnesses (and if the evidence supports said conclusion) then, too, detention is authorized in accordance with §§3142(e) and (f)(2)(B)." United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988); see also United States v. Pierce, 107 F.Supp.2d 126, 133 (D.Mass. 2000) (issuing order of detention regarding a defendant that was involved in attempting to intimidate a witness). Furthermore, "obstruction of justice has been a traditional ground for pretrial detention by the courts...." United States v. LaFontaine, 210 F.3d 125, 134 (2nd Cir. 2000); see also United States v. Gotti, 794 F.2d 773, 779 (2nd Cir. 1986) ("It was not unreasonable to conclude that conditions of release would not restrain ... a person [that had

intimidated a witness] from attempts to undermine the integrity of the pending trial.")

After evaluating the evidence summarized above, the court is unpersuaded that if released the defendant would abstain from engaging in witness intimidation again in the future. The record shows by clear and convincing evidence that there is no combination of conditions that would reasonably assure the safety of the community or another person. This conclusion is not without precedent. See United States v. Fontanes-Olivo, 937 F.Supp.2d 198 (D. Puerto Rico 2012) (ordering the mayor of the Municipality of Barceloneta detained without bail and noting that "the Bail Reform Act's legislative history also emphasizes that defendants who have threatened potential witnesses pose a significant danger and should be detained pending trial. S.Rep. No. 98-225, at 7, 12, 15, 21, *reprinted* in 1984 U.S.C.C.A.N. 3182, 3190, 3195, 3198, 3204").

WHEREFORE, the government's motion to detain [2] Eduard Rivera-Correa without bail is hereby GRANTED. The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of July, 2014.

s/Marcos E. López<br>U.S. Magistrate Judge